## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, A Delaware Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. |
| UNION STATION KANSAS CITY, INC., a Missouri Non-Profit Corporation, Serve: National Registered Agents, Inc., 5661 Telegraph Road, Suite 4B St. Louis, Missouri 63129, | ) ) ) ) ) ) | |
| THE CITY OF KANSAS CITY, MISSOURI Serve: City Hall Law Department 414 East 12th Street, 23rd Floor Kansas City, MO 64106, | ) ) ) ) ) | |
| THE GREATER KANSAS CITY SPORTS COMMISSION, a Missouri Non-Profit Corporation, Serve: Registered Agent, Kathy Nelson 1100 Walnut St., Suite 3450B Kansas City, MO 64106 | ) ) ) ) ) ) ) | |
| KELI WENZEL D/B/A O'NEILL EVENTS AND MARKETING Serve: Keli Wenzel 1607 Oak Street Kansas City, Missouri 64108, | ) ) ) ) ) ) | |
| FLYOVER EVENT CO., LLC Serve Member: Christopher M. Phelan 10685 Riggs Drive Overland Park, Kansas 66212, | ) ) ) ) ) | |
| ALEXANDREA SPRINGFIELD | ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Cincinnati Specialty Underwriters Insurance Company ("Cincinnati"), by and through undersigned counsel, for its Complaint for Declaratory Judgment, states as follows:

## NATURE OF CASE

1.      This is a declaratory judgment action brought pursuant to 28 U.S.C. §§ 2201, 2202, and Fed. R. Civ. P. 57 to determine Cincinnati's rights and obligations under a commercial general liability insurance policy ("the Cincinnati Policy or Policy") it issued to The Greater Kansas City Sports Commission ("GKCSC").

2.      An actual and justifiable controversy exists between the parties. This action will resolve a dispute as to whether the Cincinnati Policy provides coverage to GKCSC as well as Union Station Kansas City Inc. ("Union Station"); The City of Kansas City, Missouri ("City"); Keli Wenzel d/b/a O'Neill Events & Marketing ("O'Neill"); and Flyover Event Co. LLC ("Flyover")  in connection with the underlying lawsuit ("Underlying Lawsuit") filed on December 15, 2025 in the Circuit Court of Jackson County, Missouri, by Alexandrea Springfield (referenced to in this Pleading as "Underlying Plaintiff") against GKCSC, Union Station, the City, O'Neill, and Flyover. The Underlying Lawsuit is styled *Alexandrea Springfield v. Union Station Kansas City, Inc., et al.* (Case No.: 2516-CV41088).

3.      The Underlying Lawsuit seeks damages for the alleged injuries sustained by the Underlying Plaintiff, at the Kansas City Chiefs Super Bowl Rally ("Rally") on February 14, 2024, in which it is alleged several attendees opened gun fire, shooting and killing one person and causing mass panic among attendees, which resulted in the Underlying Plaintiff being knocked to the ground and trampled by the fleeing crowd.

2

4. The Underlying Lawsuit is the most recently filed of five lawsuits ("State Lawsuits") filed in the Circuit Court of Jackson County, Missouri relating to injuries claimed to arise out of the shooting that occurred on February 14, 2024 at the Super Bowl Rally.[1]

5. The four prior state court lawsuits were consolidated on October 22, 2025, under the lawsuit styled *Erika Reyes et al v. Dominic Miller et al.,* Case No. 2516-CV17538.

6. Both Cincinnati and GKCSC have sought to litigate questions of coverage relating to these State Lawsuits, with Cincinnati having filed four declaratory judgment complaints in the U.S. District Court for the Western District of Missouri and GKCSC having filed third-party complaints seeking declaratory relief in the *Reyes* and *Lopez-Galvan* State Lawsuits and filed motions for leave to file counterclaims for declaratory judgment in the *Salas-Zarate* and *Lemons* State Lawsuits.[2] Cincinnati's four declaratory judgment complaints ("Federal Declaratory Judgment Complaints") were consolidated on September 17, 2025, under the action styled *The Cincinnati Specialty Underwriters Insurance Company v. The Greater Kansas City Sports Commission et al*., Case No. 4:25-cv-00371.

7. Parties to the Federal Declaratory Judgment Complaints are currently briefing Judge Wimes's Court on two motions to dismiss (one filed by purported insured defendants and the other filed by plaintiffs to the underlying State Lawsuits) the Federal Declaratory Judgment

---

[1] These four State Lawsuits are listed as follows:
- *Abigail Salas-Zarate as next friend to S.A., v. The Greater Kansas City Sports Commission* (Case No. 2516-CV06384)
- *James Lemons v. The Greater Kansas City Sports Commission* (2516-CV06736)
- *Erika Reyes et al v. Dominic Miller et al* (Case No. 2516-CV17538)
- *Michael Galvan et al v. Union Station Kansas et al* (Case No. 2516-CV19394)

[2] These four Federal Declaratory Judgment Complaints are listed by case number as follows:
- Case No. 4:25-cv-00371
- Case No. 4:25-cv-00385
- Case No. 4:25-cv-00545
- Case No. 4:25-cv-00568

Complaints. These motions to dismiss were filed on October 31st, 2025. Cincinnati's suggestions in opposition to these motions were filed on December 1st, 2025. Reply suggestions to the motions to dismiss were filed on December 15th 2025.

8.    Cincinnati was notified on October 27th, 2025, that several parties not currently in any State Lawsuit made a global settlement demand to Union Station with respect to several claimed injuries arising out of the shooting that occurred at or around the Rally and that Union Station subsequently requested indemnification from GKCSC on October 27th, 2025 with respect to the global settlement demand. Accordingly, on December 1st, 2025, Cincinnati filed a motion for leave to file amended declaratory judgment complaints to add these additional parties and claims. This motion is currently pending.

9.    Rather than file a superseding motion for leave to file amended complaints or withdraw its motion and refile to seek declaratory relief with respect to the Underlying Lawsuit, Cincinnati intends to seek consolidation of this complaint for declaratory judgement into the consolidated Federal Declaratory Judgment Complaints as they involve the same or substantially similar shooting and issues.

## PARTIES, JURISDICTION, VENUE

10.    The Cincinnati Specialty Underwriters Insurance Company is a registered Delaware corporation with its principal place of business in Fairfield, Ohio.

11.    The Greater Kansas City Sports Commission is a Missouri non-profit corporation and is incorporated in Missouri with its principal place of operation/business in Missouri. The GKCSC may be served via its registered agent, Kathy Nelson, at 1100 Walnut St., Ste. 3450B, Kansas City, Missouri 64106.

4

12.     Union Station Kansas City, Inc. is a Missouri non-profit corporation organized under the laws of Missouri and is incorporated in Missouri with its principal place of operation/business in Missouri. Union Station may be served with process via its registered agent, National Registered Agents, Inc., at 5661 Telegraph Road, Suite 4B, St. Louis, Missouri 63129.

13.     The City of Kansas City, Missouri is a Missouri Charter City, and may be served at City Hall Law Department 414 East 12th Street, 23rd Floor, Kansas City, Missouri 64106.

14.     O'Neill Events & Marketing, a fictitious name registered with the State of Missouri, and sole owner of O'Neill, Keli Wenzel, may be served with process at 1607 Oak Street, Kansas City, Missouri 64108. Keli Wenzel is an individual who is a citizen and resident of Missouri. Keli Wenzel is domiciled in Missouri.

15.     Flyover Event Co., LLC is a limited liability company organized under the laws of the State of Kansas, and is a citizen and resident of the State of Kansas. Flyover may be served with process via its Registered Agent, Christopher M. Phelan at 10685 Riggs Drive, Overland Park, Kansas 66212.  Christopher M. Phelan is the only known member of Flyover. Christopher Phelan is an individual who is a citizen and resident of Kansas. Christopher M. Phelan is domiciled in the State of Kansas.

16.     Alexandrea Springfield is a citizen and resident of the State of Missouri, as well as domiciled in Missouri.

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest, and attorney's fees and there exists complete diversity of citizenship.

18.     Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to this lawsuit occurred in this Federal District.

5

## **FACTUAL BACKGROUND**

### **The Cincinnati Policy**

19.     Cincinnati issued GKCSC a special event commercial general liability insurance policy, Policy No. CSU0225122, with a policy period from February 12, 2024, to February 17, 2024, and limits of insurance of $1,000,000 each occurrence, $5,000,000 general aggregate. ("the Cincinnati Policy"). A certified copy of the Cincinnati Policy is attached as Exhibit 1 and is incorporated into this Complaint as if fully set forth herein.

20.     To the extent that there was any occurrence, there is only one occurrence.

21.     The coverage provided by the Cincinnati Policy is subject to its terms, conditions, endorsements, limitations, and exclusions.

22.     The Insuring Agreement of Coverage A of the Cincinnati Policy, Form CG 00 01 04 13, states in pertinent part as follows:

> **1.     Insuring Agreement**
>
> > a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
> >
> > b.     This insurance applies to "bodily injury" and "property damage" only if:
> >
> > > (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
> > >
> > > (2)     The "bodily injury" or "property damage" occurs during the policy period; . . . (*See,* Ex. A, at p. 21).

19. The Cincinnati Policy contains an endorsement titled Exclusion – Personal and Advertising Injury, Form CG 21 38 11 85, which reads in pertinent part as follows:

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

COVERAGE B (Section I) does not apply and none of the references to it in the Coverage Part apply.

(*See,* Ex. 1, at p. 57).

24. Cincinnati Policy defines "bodily injury" and "occurrence" as follows:

**3.** "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

. . .

**13.** "Occurrence" means an accident, including continuous or repeated exposure to the same general harmful conditions.

(*See,* Ex. A, at pp. 33 & 35).25. The Cincinnati Policy defines "you," "your," and "insured" as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. . . .

The word "insured" means any person or organization qualifying as such under Section **II** – WHO IS AN INSURED.

(*See,* Ex. A, at p. 21).

26. The "Who Is An Insured" provision of Form CG 00 01 04 13 of The Cincinnati Policy states in pertinent part as follows:

**SECTION II - WHO IS AN INSURED**

**1.** If you are designated in the Declarations as: . . .

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

7

       **c.**      A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers. . . .

       **d.**      An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

(*See,* Ex. A, at p. 30).

27.    The "Who Is An Insured" provision of Form CG 00 01 04 13 of The Cincinnati Policy is modified by an Endorsement Form CSGA 434 11 08 ("Additional Insured Endorsement"), which states in pertinent part as follows:

    **A.**    **SECTION II - WHO IS AN INSURED** is amended to include as an insured any person or organization described in Paragraph **B.** below (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of a written contract or agreement is an insured, provided:

       **1.**    The written contract or agreement is:

          **a.**    Currently in effect or becomes effective during the policy period; and

          **b.**    Executed prior to an "occurrence" or offense to which this insurance would apply; and

       **2.**    They are not specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part.

    **B.**    Only the following persons or organizations are additional insureds under this endorsement, but only with respect to liability caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf. Insurance coverage provided to such additional insureds is limited as provided herein:

       **1.**    The manager or lessor of a premises leased to you with whom you have agreed per Paragraph **A.** above to provide insurance, but only with respect to the ownership, maintenance or use of that part of a premises leased to you, subject to the following additional exclusions:

This insurance does not apply to:

    **a.**    Any "occurrence" which takes place after you cease to be a tenant in that premises.

    **b.**    Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

**2.**    Any person or organization from which you lease equipment with whom you have agreed per Paragraph **A.** above to provide insurance. However, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**3.**    Any state or political subdivision which you have agreed per Paragraph **A.** above to provide insurance, subject to the following additional provision:

This insurance applies only with respect to the following hazards for which the state or political subdivision has issued a permit in connection with premises you own rent or control and to which this insurance applies:

    **a.**    The existence, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away openings, sidewalk vaults, street banners, or decorations and similar exposures; or

    **b.**    The construction, erection, or removal of elevators; or

    **c.**    The ownership, maintenance, or use of any elevators covered by this insurance.

**C.**    With respect to the insurance afforded to these additional insureds, **SECTION III – LIMITS OF INSURANCE** is amended to include:

The limits applicable to the additional insured are those specified in the written contract or agreement or in the Declarations of this Coverage Part, whichever is less. If no limits are specified in the written contract or agreement, the limits applicable to the additional insured are those specified in the Declarations of this Coverage Part. The limits of insurance are inclusive of and not in addition to the limits of insurance shown in the Declarations.

**D.**    With respect to the insurance afforded to these additional insureds, **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance** is amended to include:

9

Any coverage provided herein will be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless you have agreed in a written contract or written agreement executed prior to any loss that this insurance will be the primary. This insurance will be noncontributory only if you have so agreed in a written contract or written agreement executed prior to any loss and this coverage is determined to be primary.

(*See,* Ex. A, at p. 62 – 63).

28.     The Cincinnati Policy includes the Exclusion – Assault Or Battery Endorsement, Form CSGA 301 02 21 ("the Assault or Battery Exclusion"), which states in pertinent part as follows:

> **A.**     The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A - Bodily Injury And Property Damage Liability and** Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**
>
> **Assault Or Battery**
>
> This insurance does not apply to "bodily injury" . . . that in any way, in whole or in part, arises out of an actual, threatened or alleged:
>
> **1.**     Assault or battery whether caused by or at the instigation or direction of any insured, their  employees, patrons or any other person;
>
> **2.**     The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or
>
> **3.**     The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery; or
>
> **4.**     Failure to render or secure medical treatment or care necessitated by any assault or battery; or
>
> **5.**     Negligent investigation or reporting or failure to report any assault or battery to proper authorities; or
>
> **6.**     The negligent:

10

         **a.**     Employment;

         **b.**     Supervision;

         **c.**     Training;

         **d.**     Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the **Assault Or Battery exclusion** above . . . .

**C.**    Exclusion **2.a.** of the Commercial General Liability Coverage Form is deleted in its entirety and replaced by the following:

**2.  a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

(*See,* Ex. A, at p. 74).

## The Underlying Lawsuit

29.     Underlying Plaintiff commenced the Underlying Lawsuit on December 15, 2025. The Underlying Lawsuit's Petition ("Petition"), named Union Station, the City, GKCSC, O'Neill, and Flyover as defendants ("Underlying Defendants"). A true and correct copy of the Petition is attached as Exhibit 2 hereto.

30.     The Petition brings forth a count of negligence and a count of premises liability against the Underlying Defendants.

31.     The Petition alleges that at all times relevant, Underlying Defendants owned, possessed, controlled, operated, managed leased, and/or responsible for securing the premises located at the property located at 2 Memorial Dr. Kansas City, Missouri 64108 (referenced in the Petition as "the Premises"). Petition ¶ 9.

32.     The Petition alleges that at all times material to the Underlying Lawsuit, Underlying Defendants were responsible for the inspection, maintenance, securing, and/or providing security and/or crowd control at and on the Premises. Petition ¶ 10.

33.     The Petition alleges that on February 14, 2024, Underlying Plaintiff was an invitee on the Premises and that Underlying Defendants planned, managed, supervised, allowed for, and/or hosted the Super Bowl LVIII Victory Rally. Petition ¶ 12.

34.     The Petition alleges that at approximately 2:00 p.m., hundreds of thousands of fans were in front of Union Station when several attendees opened gun fire, shooting and killing one person and causing mass panic among the attendees.  As the attendees at Underlying Defendants' rally ran for cover from the shooting, Underlying Plaintiff was knocked to the ground and trampled by the fleeing crowd. Petition ¶ 13.

35.     The Petition alleges that Underlying Plaintiff suffered multiple fractures to her leg, torn ligaments and tendons in her knee, and a dislocation of her foot and that as a result of these injuries, Underlying Plaintiff had to undergo multiple surgical repairs of her leg and knee. Petition ¶ 14.

36.     The Petition alleges in Count I of Negligence against the Underlying Defendants that Underlying Defendants were aware of past parade and mass-gathering event disasters and of gun violence near and around Union Station but did not adequately plan and implement strategies to mitigate the same from happening at the Rally. Petition ¶ 17.

37.     The Petition alleges Count I of Negligence against the Underlying Defendants alleging that they breached their duties of care owed to Underlying Plaintiff and that the "Subject Incident" and Underlying Plaintiff's injuries were the direct and proximate result of negligence,

carelessness, violations and failures of Underlying Defendants to exercise reasonable care, including, but not limited to the following:

a. Failing to adequately plan the security for the Rally;

b. Failing to adequately stage/employ SWAT Trained Officers around the venue;

c. Failing to maintain an adequate memorandum of understanding for partnerships with law enforcement;

d. Failing to provide effective communication to public regarding overall potential risks to attending;

e. Failing to engage a spectator management plan (e.g., a plan for ticketing the event and admittance, inspection, ushering, seating/standing, the public announcements, etc.);

f. Failing to engage in crowd management/crowd control with mechanisms used to maintain order or reinstate order, such as limited access control, admission control, and sufficient monitoring and policing (including failing to monitor and diffuse crowd tension);

g. Failing to have and adequately broadcast a plan for evacuation and exit management and to engage in safe evacuation to lead spectators away from violence;

h. Failing to implement a "Clear Bag Policy";

i. Failing to implement a list of prohibited items;

j. Failing to implement one or more security checkpoints;

k. Failing to implement a system requiring free ticket or gain entry;

l.   Failing to set up adequate physical security barriers such as Jersey barriers and cement barriers; and

m.   Failing to maintain reasonable security equipment like scanning technologies, such as magnetometers or x-ray machines.  Petition ¶ 18.

38.     The Petition alleges that the Underlying Defendants actions constituted negligence on the part of the Underlying Defendants and that each of the listed acts and failures were a direct and proximate cause of the alleged injuries suffered by Underlying Plaintiff, which included spinal, cervical, head injuries, and permanent injuries.  Underlying Plaintiff also alleges that as a result of Underlying Defendants acts and omissions, Underlying Plaintiff has suffered and will continue to suffer physical pain, suffering, mental anguish, inconvenience, physical impairment, scarring, disfiguring and loss of capacity to enjoy life. Petition ¶¶ 19 - 22.

39.     The Petition alleges in Count II of Premises Liability against the Underlying Defendants that Underlying Defendants owed Underlying Plaintiff duties to keep and maintain the premises in a reasonably safe condition, to warn Underlying Plaintiff of hazards and/or dangerous conditions of which they knew or should have known about and to remedy any such hazards and/or dangerous conditions of which they knew or should have known. Petition ¶ 27.

40.     The Petition alleges in Count II of Premises Liability against the Underlying Defendants that at all times material to the Underlying Lawsuit, the negligent security created a dangerous hazardous and/or defective condition.  Petition ¶ 28.

41.     The Petition alleges in Count II of Premises Liability against the Underlying Defendants that Underlying Plaintiff's injuries and damages were directly and proximately caused by the negligence committed by Underlying Defendants by and through their actions, when they breached their duties by:

14

a. Negligently failing to maintain or adequately maintain or adequately maintain security on the Premises, thus creating a hazard to and unreasonably dangerous conditions for invitees upon the Premises, including Plaintiff;

b. Negligently creating a hazard to invitees upon the Premises, including Plaintiff, by providing negligent security thus creating an unreasonably dangerous condition for Plaintiff;

c. Negligently failing to inspect or adequately inspect the security on the premises to ensure the lack of thereof didn't create a hazard to invitees upon the premises, including Plaintiff, thus creating an unreasonably dangerous condition for Plaintiff;

d. Negligently failing to warn or adequately warn Plaintiff of the danger on the Premises due to the negligent security when Defendants knew or through the exercise of reasonable care should have known that it was unreasonably dangerous and that Plaintiff was unaware of or could not avoid the same;

e. Negligently failing to barricade and/or warn or otherwise prevent invitees, including Plaintiff, from the dangerous, hazardous and/or defective condition created on the Premises; and

f. Negligently failing to or improperly attempting to remove, remedy, repair, correct and/or adequately correct the unreasonably dangerous condition when said condition was either known to Defendants or had existed for a sufficient length of time such that Defendants should have known of same had Defendant exercised reasonable care. Petition ¶ 29.

42. The Petition alleges that the Underlying Defendants actions constituted negligence on the part of the Underlying Defendants and that each of the listed acts and failures were a direct and proximate cause of the alleged injuries suffered by Underlying Plaintiff, which included leg, knee, and ankle injuries that required multiple surgeries. Underlying Plaintiff also alleges that as a result of Underlying Defendants acts and omissions, Underlying Plaintiff has suffered and will continue to suffer physical pain, suffering, mental anguish, inconvenience, physical impairment, scarring, disfiguring and loss of capacity to enjoy life. Petition ¶¶ 30 - 33.

43. The Petition alleges that that because of these injuries Underlying Plaintiff has been obligated to seek medical treatment and incur expenses, and require future medical treatment. Petition ¶¶ 29, 34.

## No Indemnity Or Defense Is Owed By Cincinnati

44. As noted above, the Underlying Plaintiff filed her Petition on December 15, 2025.

45. With respect to GKCSC, GKCSC is the named insured pursuant to The Cincinnati Policy.

46. With respect to the City, Union Station, O'Neill, and Flyover, these parties are not named insureds pursuant to the Cincinnati Policy.

47. Cincinnati is aware of an agreement ("Venue Agreement"), effective on February 12, 2024, between GKCSC and Union Station, whereby GKCSC paid Union Station for use and access of the premises for the Rally. A true copy of the Venue Agreement is attached as Exhibit 3.

48. Pursuant to the Venue Agreement, GKCSC was required, in part and in certain circumstances to procure and maintain insurance throughout the life of the Venue Agreement.

16

Specifically the Venue Agreement (referring to GKCSC as "KCSC" and Union Station as "USKC") requires:

   a. KCSC agrees that it shall have and maintain liability insurance in such types and amounts required by USKC, naming USKC as an additional insured on such insurance policies. KCSC shall provide US with a Certificate of Coverage to USKC's satisfaction prior to executing this Agreement.

   b. Kansas City Sports Commission shall procure a Special Event Liability Insurance (or similar CGL policy) with limits of $1,000,000 per occurrence and $5,000,000 in the aggregate, other than completed operations, and written on an "occurrence" basis. Damage to premises coverage of $500,000.

   c. The Commercial Special Event Liability Insurance (or similar CGL Policy) specified above shall provide that CONTRACTOR/VENDOR be named as additional insured for the services performed under this contract

   49.    Furthermore, the Venue Agreement contains a reciprocal indemnity provision as follows:

   a. Without limitation to any other provision herein, KCSC hereby agrees to indemnify and hold harmless US, its affiliates and its employees, agents or representatives, against and from any and all liabilities; claims, demands, damages penalties, loss, cost or judgment (including without limitation, all costs of investigation, legal fees, and the cost of enforcing this indemnity) arising out of or resulting from KCSC's including without limitation any personal injury and/or property damage claims or any loss whatsoever incurred by US resulting in any way from KCSC's failure to comply with any of the terms under this Agreement. . . .

   50.    With respect to Union Station, Cincinnati has determined that Union Station qualifies as an additional insured pursuant to Additional Insured Endorsement of the Cincinnati Policy. Cincinnati also presumed, at least for the purposes of its duty to defend determination, that the allegations in the Petition satisfy the insuring agreement of Coverage A of the Cincinnati Policy. Notwithstanding, to the extent the Policy offers coverage to Union Station on an additional insured basis, such coverage is subject to all other terms, conditions, limitations, and exclusions contained in the Policy.

17

51.     Paragraph D of the Additional Insured Endorsement expresses that any additional insured coverage provided by the Policy is excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or any other basis unless the GKCSC agreed in the Venue Agreement that the Policy's additional insured coverage would be primary.  The Venue Agreement does not express that the required special event liability policy or similar commercial general liability policy be on a primary basis.  Therefore, to the extent Union Station has its own separate insurance policy, such policy would be primary and the Cincinnati Policy would be excess.

52.     To the extent the Union Station claims that GKCSC must indemnify and defend the Union Station for the claims made against the Union Station, the Union Station's indemnity claim against the GKCSC does not constitute an occurrence pursuant to the provisions, terms, conditions and exclusions of the Cincinnati Policy.

53.     Even if Union Station does make indemnity claim against the GKCSC that claims an accident causing bodily injury, the assault and battery exclusion would apply.

54.     Even if Union Station's indemnity claim constitutes an insured contract, the exceptions to the Contractual Liability Exclusion, including the insured contract exception, do not create coverage for otherwise excluded liabilities.

55.     The Policy contains an exclusion for Contractual Liability, which states in part:

**2.     Exclusions**

This insurance does not apply to: . . . .

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is
obligated to pay damages by reason of the assumption of liability in

18

a contract or agreement. This exclusion does not apply to liability for damages:

(1)     That the insured would have in the absence of the contract or agreement; or

(2)     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)     Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)     Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

(*See,* Ex. 1, at p. 22).

56.     The Policy as amended by the Amendment of Insured Contract Definition Endorsement, Form CG 24 26 04 13, defines "insured contract" in pertinent part as follows:

"Insured contract" means: . . . .

**f.**     That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. . . .

*         *         *

(*See,* Ex. 1, at p. 51).

57.     The insured contract provision is an exception to the Contractual Liability exclusion and does not create coverage.

58.     Cincinnati is also aware of an agreement ("City Agreement"), effective February 6, 2024, between GKCSC and the City, whereby the City agreed to pay the GKCSC for its work on facilitating the Parade and Rally.  A true copy of the City Agreement is attached as Exhibit 4 and is incorporated into this Complaint as if fully set forth herein.

59.     Pursuant to the City Agreement, GKCSC (referred to in the City Agreement as "Contractor") was required to procure and maintain insurance throughout the duration of the City Agreement, insurance coverage with the City named as an additional insured.  Specifically, the City Agreement requires:

> A.  Contractor shall procure and maintain in effect throughout the duration of this Contract insurance coverage not less than the types and amounts specified in this section.  In the event that additional insurance, not specified herein, is required during the term of this Contract, Contractor shall supply such insurance at City's Cost.  Policies containing a Self-Insured Retention are unacceptable to City unless City approves in writing the Contractor's Self-Insured Retention.
>
> 1)  Commercial General Liability Insurance:  with limits of $1,000,000 per occurrence and $2,000,000 aggregate, written on an "occurrence" basis. The policy shall be written or endorsed to include the following provisions:
>
> a.  Severability of Interests Coverage applying to Additional Insureds;
>
> b.  Contractual Liability;
>
> c.  Per Project Aggregate Liability Limit or Where not available, the aggregate limit shall be $2,000,000;
>
> d. No Contractual Liability Limitation Endorsement; and
>
> e. Additional Insured Endorsement, ISO form CG20 10, current edition, or its equivalent.

20

2) Special Event Liability Insurance (or similar CGL policy) with limits of $1,000,000.00 per occurrence and $5,000,000.00 in the aggregate, other than completed operations, and written on an "occurrence" basis. Damage to premises coverage of $500,000.00. This policy should include a Terrorism Risk rider based on the type of event.

3) Workers' Compensation Insurance: as required by statute including Employers Liability $1,000,000 accident with limits of $1,000,000 disease-policy limit; $1,000,000 disease-each employee.

4) Commercial Automobile Liability Insurance: with a limit of $1,000,000 per occurrence, covering owned, hired, and non-owned automobiles. Coverage provided shall be on an "any auto" basis and written on an "occurrence" basis. This insurance will be written on a Commercial Business Auto form, or acceptable equivalent, and will protect against claims arising out of the operation of motor vehicles, as to acts done in connection with the Contract, by Contractor.

5) If applicable, Professional Liability Insurance with limits per claim and annual aggregate of $2,000,000. . . .

60.     The City Agreement also requires the GKCSC to defend, indemnify, and hold harmless, the City from and against all claims arising out of or resulting from all acts or omissions in connection with the City Agreement caused in whole or in part by the GKCSC.   Specifically the City Agreement requires that:

C.     Contractor shall defend, indemnify and hold harmless City from and against all claims arising out of or resulting from all acts or omissions in connection with this Contract caused in whole or in part by Contractor or Contractor's Agents, regardless of whether or not caused in party by any act or omission, including negligence, of City. Contractor is not obligated under this Section to Indemnify City for the sole negligence of City.

61.     With respect to GKCSC, Cincinnati has acknowledged that the City is an additional insured.  Notwithstanding, to the extent the Policy offers coverage to the City on an additional insured basis, such coverage is subject to all other terms, conditions, and exclusions contained in the Policy.

62.     To the extent the City claims that GKCSC must indemnify and defend the City for the claims made against the City, the City's indemnity claim against the GKCSC does not constitute an occurrence pursuant to the provisions, terms, conditions and exclusions of the Cincinnati Policy.

63.     The City's indemnity claim against the GKCSC does not claim an accident causing personal injury, bodily injury or property damage.

64.     Even if the City's indemnity claim constitutes an insured contract, the exceptions to the Contractual Liability Exclusion, including the insured contract exception, do not create coverage for otherwise excluded liabilities.

65.     Paragraph D of the Additional Insured Endorsement expresses that any additional insured coverage provided by the Policy is excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or any other basis unless the GKCSC agreed in the City Agreement that the Policy's additional insured coverage be primary.  The City Agreement does not express that the required special event liability policy or similar commercial general liability policy be on a primary basis.

66.     At this time, Cincinnati is unaware of any similar agreements between GKCSC and O'Neill or Flyover that would require GKCSC to obtain an insurance policy with O'Neill or Flyover named as additional insureds.  Therefore, O'Neill and Flyover are not additional insureds under the Cincinnati Policy and therefore are not owed any coverage from Cincinnati.

67.     Even if O'Neill and Flyover were insureds, which they are not, the same policy provisions would apply such that there is not indemnity or defense owed to O'Neill and/or Flyover.

68. The Policy includes the Exclusion – Assault Or Battery Endorsement, Form CSGA 301 02 21 (hereinafter, the "A/B Exclusion").

69. The Policy does not provide coverage for, among other things, bodily injury that "in any way, in whole or in part, arises out of an actual, threatened or alleged assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person"; failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, failure to secure or render medical treatment, or failure to warn of the dangers of the environment that could contribute to assault or battery; or negligent employment, supervision, training, or retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the A/B Exclusion.

70. The bodily injuries alleged in the Underlying Lawsuit are excluded by the Assault and Battery Exclusion.

71. Therefore, Cincinnati Policy's Assault or Battery Exclusion applies and there is no indemnity or defense owed by Cincinnati.

72. To the extent that Underlying Plaintiff suffered emotional injury and not bodily injury, such emotional injury would not be "bodily injury" caused by an "occurrence".

73. Due to the Cincinnati Policy's endorsement titled "Exclusion – Personal and Advertising Injury", which removes the Insurance Agreement of Coverage B from the Cincinnati Policy, the Cincinnati Policy owes no coverage for emotional injury. Therefore, Cincinnati would not owe any indemnity or defense.

74.     The Underlying Lawsuit does not say with specificity where her injuries occurred. If any of the claimed injuries did not take place at the special event, then there would not be indemnity or defense owed by Cincinnati.

## COUNT I – DECLARATORY JUDGMENT

75.     Paragraphs 1 through 74 are hereby incorporated by reference.

76.     There exists an actual controversy of a judiciable nature between the parties concerning the rights and obligations of the parties to the insurance contract.

77.     This matter is ripe because there is a dispute regarding Cincinnati's exposure or duties in the settlement and/or adjudication of this matter.

78.     Cincinnati has complied with all terms, conditions, and provisions of the insurance contract.

79.     By virtue of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations, and liabilities that exist between the parties in connection to the aforementioned Policy.

## JURY TRIAL DEMAND

80.     Pursuant to Fed. R. Civ. P. 38(b) Cincinnati hereby demands that this case be tried by a jury.

WHEREFORE, Plaintiff The Cincinnati Specialty Underwriters Insurance Company prays that this Court enter judgment in its favor and against Defendant declaring:

A.     That The Cincinnati Specialty Underwriters Insurance Company had/has no duty to defend Defendants, The Greater Kansas City Sports Commission, The City of Kansas City, Union Station Kansas City, Inc., O'Neill Events & Marketing, or Flyover Event Co. LLC under

the Cincinnati Policy with respect to any claims asserted or which could have been asserted in the Underlying Lawsuit, or the losses claimed therein;

B.    That The Cincinnati Specialty Underwriters Insurance Company has no duty to indemnify or provide any other coverage to the Greater Kansas City Sports Commission, The City of Kansas City, Union Station Kansas City, Inc., O'Neill Events & Marketing, Flyover Event Co. LLC, or Alexandrea Springfield for claims, loss or damages in the Underlying Lawsuit.

C.    That The Cincinnati Specialty Underwriters Insurance Company has no duty to contribute any manner or amount to any settlement or proposed settlement of the Underlying Lawsuit; and

D.    For such other and further relief as the Court deems just, proper, and equitable.

Respectfully submitted,

LITCHFIELD CAVO LLP

By:  */s/   Michael L. Brown*
Michael L. Brown          MO #55732
Anthony Hernandez        MO #69129
10401 Holmes Road, Suite 220
Kansas City, MO 64131
(816) 648-1400
(816) 648-1401 Fax
brown@litchfieldcavo.com
hernandeza@litchfieldcavo.com
ATTORNEYS FOR PLAINTIFF
THE CINCINNATI SPECIALTY
UNDERWRITERS INSURANCE COMPANY

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that December 19 on the, 2025, the foregoing was electronically filed with the Clerk of the District Court using the CM/ECF system, which will send notice of electronic filing to all registered attorneys of record.


By: /s/*Michael Brown*
Counsel for The Cincinnati Specialty
Underwriters Insurance Company